IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANITA EIERSTOCK, and JOSEPH RAMOS,
on behalf of themselves and
all others similarly situated,

     Plaintiffs,

v.                                   **CASE NO.: 8:20-cv-00269-T-35AEP**

THE ADMINISTRATIVE
COMMITTEE OF DELTA AIRLINES, INC.,[1]

     Defendant.

_____/

### FIRST AMENDED CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF

Named Plaintiffs Anita Eierstock and Joseph Ramos ("Plaintiffs"), file this First Amended Class Action Complaint alleging The Administrative Committee of Delta Airlines, Inc. ("Defendant" or "Delta") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide them with a COBRA notice that complies with the law.

### INTRODUCTION

1.     Despite having access to the Department of Labor's Model COBRA form, a copy of which is attached as Exhibit A, Defendant chose not to use the model form—

---

[1] "Delta Airlines, Inc." was the originally-named Delta entity to this lawsuit but, according to Delta, the correct Delta entity to this lawsuit is "The Administrative Committee of Delta Airlines, Inc.," the defendant named in this complaint.

presumably to save Defendant money by pushing terminated employees away from electing COBRA.[2]

2.      Put another way, instead of utilizing the DOL Model Notice and sending a single COBRA notice "written in a manner calculated to be understood by the average plan participant" containing all required by law, to save money Defendant instead opted to break the information into multiple documents, mailed separately under different cover, containing bits and pieces of information on COBRA, which neither individually nor cumulatively contain all of the missing information.

3.      In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Defendant confusing and piecemeal COBRA rights notification process.

4.      The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiffs.  It also caused Plaintiffs economic injuries in the form of lost insurance and unpaid bills, as well as informational injuries.

5.      Defendant is the plan administrator of several different ERISA-governed plans for its employees, and Plaintiffs were each covered under one or more of these plans.

6.      Defendant has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

---

[2] In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend that this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." Health Insurance Continuation Coverage Under COBRA, Congressional Research Service, Janet Kinzer, July 11, 2013.

7.      For example, Defendant's COBRA "Enrollment Worksheet," attached as Exhibit B, violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to include basic information, like the address to which payments should be sent.   And, Exhibit B violates 29 C.F.R. § 2590.606–4(b)(4)(viii) because it fails to include the required explanation of a specific continuation coverage termination date.

8.      It also violates 29 C.F.R. § 2590.606-4(b)(4)(i) by failing to identify the name of the specific plan(s) at issue in the notice, and also fails to identify the Plan Administrator, "The Administrative Committee of Delta Airlines, Inc."

9.      Furthermore, Exhibit B violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.

10.      Because Exhibit B omits the above critical pieces of information, it violates 29 C.F.R. § 2590.606–4(b)(4), which requires the plan administrator of a group-health plan to provide a COBRA notice "written in a manner calculated to be understood by the average plan participant."

11.      To compound the confusion, Defendant sent Plaintiffs a second letter and third COBRA informational letter/notice, attached as Exhibits C and D.  The two documents were mailed under separate cover from Defendant's COBRA "Enrollment Worksheet," only further adding to the confusion.  And, while Exhibits C and D contained some of the information missing from Exhibit B, they did not contain all of the legally required information.

12.      As a result of receiving the deficient COBRA enrollment notice, and the subsequent letters attached as Exhibits C and D, Plaintiffs failed to understand the notice and,

3

thus, Plaintiffs could not make an informed decision about health insurance and lost health coverage.

13.     Plaintiffs suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical-related bills/expenses, due to Defendant's deficient COBRA forms.  And, not only did Plaintiffs lose their insurance coverage, after they lost their insurance they incurred medical and health-care related expenses, resulting in further economic injury.

14.     Plaintiffs suffered further injury when they were forced to forego treatment because they lost their insurance due to Defendant's deficient COBRA notice.  Plaintiffs also lost control over their personal health/dental/vision plans, including provider selection. Additionally, Plaintiffs could not pro-actively manager health/dental/vision care, since they did not have insurance.

15.     And, Plaintiffs suffered injury in the form of stress and anxiety created by the loss of insurance coverage.

16.     Finally, Defendant's deficient COBRA notice also caused Plaintiffs an informational injury when Defendant failed to provide them with information to which they were entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

17.     As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiffs seek statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION, VENUE, AND PARTIES

18.    This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

19.    Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2).

20.    Defendant operates in this District, where Plaintiffs Anita Eierstock and Joseph Ramos worked.

21.    Named Plaintiffs Anita Eierstock and Joseph Ramos are Florida citizens and each reside in the Middle District of Florida, Tampa Division.

22.    Named Plaintiffs Anita Eierstock and Joseph Ramos both worked for in the Middle District of Florida, Tampa Division, and were covered under one or more Delta health plan(s) subject to ERISA/COBRA here.

23.    Named Plaintiffs Anita Eierstock and Joseph Ramos lost their jobs in this District, meaning that the "qualifying event" triggering Plaintiffs' entitlement to receive notice of her right to elect COBRA continuation coverage occurred in the Middle District of Florida, Tampa Division.

24.    Because Plaintiffs received the deficient COBRA notices in this District, venue is also proper in the Middle District of Florida, Tampa Division.

25.    Furthermore, Plaintiffs utilized Defendant's health insurance within this District, received the violative COBRA election form within this District, and lost insurance coverage in the Middle District of Florida, Tampa Division.

26.    Defendant is registered to and does business in the State of Florida, including at the Tampa, Florida, airport located in the Middle District of Florida, Tampa Division.

27.     Defendant employed more than 20 employees who were members of the Plan during each of the four years preceding the filing of the complaint.

28.     Defendant is the Plan sponsor within the meaning of ERISA, and the administrator of the Plan within the meaning of ERISA.

29.     The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

## COBRA NOTICE REQUIREMENTS

30.     The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

31.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161.

32.     Notice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

33.     Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

6

34.    COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4).

35.    This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

36.    To facilitate compliance with notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. A copy of this Model Notice is attached hereto as Exhibit A.

37.    In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).

38.    In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

39.    Such is the case here.  Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

40.  Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Among other things:

a.  **Exhibit B violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to include basic information, like the address to which payments should be sent;**

b.  **Exhibit B also violates 29 C.F.R. § 2590.606–4(b)(4)(viii) because it fails to include the required explanation of a specific continuation coverage termination date;**

c.  **Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(i) because they fail to identify the specific name of the plan under which continuation coverage is available;**

d.  **Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(i) because they fail to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, namely the "Administrative Committee of Delta Airlines, Inc.";**

e.  **Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information. For example, there is no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act; and, finally,**

f.  **Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.**

41.  Defendant's COBRA notices confused Plaintiffs and resulted in their inability to make an informed decision as to electing COBRA continuation coverage.

42.     In fact, Plaintiffs did not understand the notice and, further, Plaintiffs were unable to elect COBRA because of the confusing and incomplete Defendant COBRA notice.

### *Facts Specific to Named Plaintiff Anita Eierstock*

43.     Plaintiff Anita Eierstock is a former long-time employee of Defendant.

44.     She began her career working for Defendant in August, 2000. After 18 years, Plaintiff was abruptly and unexpectedly terminated in July, 2018, when she was fired for purported performance issues. Importantly, Plaintiff Eierstock was not fired for gross misconduct.

45.     Weeks before Plaintiff was terminated, Plaintiff Anita Eierstock was diagnosed with a serious health condition.

46.     Plaintiff Anita Eierstock was a participant in Defendant's insurance Plan. Her husband, Frank J. Eierstock, was also covered by part of the plan, making him a Plan beneficiary.

47.     As a result of her termination on July 26, 2018, Plaintiff Anita Eierstock experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

48.     Following this qualifying event, Defendant caused its COBRA Administrator, Conduent Business Services, LLC, to mail Plaintiff Anita Eierstock the deficient COBRA enrollment notice attached hereto as Exhibit "B."

49.     Also, Defendant caused Conduent Business Services, LLC to mail Plaintiff Anita Eierstock the follow up COBRA forms attached as Exhibits "C" and "D."

50.     The deficient COBRA notice that Plaintiff Anita Eierstock received was violative of COBRA's mandates for the reasons set forth herein.

9

### *Facts Specific to Named Plaintiff Joseph Ramos*

51.     Named Plaintiff Joseph Ramos worked for Delta from March 24, 2017, until his termination on October 30, 2019.

52.     Importantly, Plaintiff Ramos was not fired for gross misconduct, as evidenced by the fact that Defendant offered him COBRA (albeit with a deficient form).

53.     Plaintiff Ramos was a participant in Defendant's the dental and vision options under the Plan.

54.     As a result of his termination on October 30, 2019, Plaintiff Ramos experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

### *Post-Termination Events and Resultant Harm*

55.     Following each Plaintiffs' respective qualifying event, Defendant caused its COBRA Administrator, Conduent Business Services, LLC, to mail them the deficient COBRA enrollment notice at issue in this lawsuit, a sample of which is attached hereto as Exhibit "B."

56.     Also, Defendant caused Conduent Business Services, LLC to mail Plaintiffs the follow up COBRA forms attached as Exhibits "C" and "D."

57.     The deficient COBRA notice that Plaintiffs received was violative of COBRA's mandates for the reasons set forth herein.

58.     Plaintiffs are not making claims for benefits under ERISA.  As such, Defendant has in place no administrative remedies for statutory damages and injunctive relief Plaintiffs were required to first exhaust prior to bringing this suit.

59.     But even if such administrative remedies exist as to Plaintiff's statutory damages claims, any attempt to exhaust the same would have been futile as this is not an ERISA benefits case.

60.     Further, exhaustion of administrative remedies is not required because Plaintiffs were not provided with proper notice of their rights in the first instance.

61.     Plaintiffs suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical-related bills/expenses, due to Defendant's deficient COBRA forms.

62.     And, not only did Plaintiffs lose their insurance coverage, after they lost their insurance they incurred medical and health-care related expenses, resulting in further economic injury.

63.     Plaintiffs suffered further injury when they were forced to forego immediate treatment because they lost her health insurance due to Defendant's deficient COBRA notice.

64.     Plaintiffs also lost control over their personal health plan, and including provider selection.  Additionally, Plaintiffs could not pro-actively manager their health and medical care, since they did not have insurance.

65.     And, Plaintiffs suffered injury in the form of stress and anxiety created by the loss of insurance coverage.

66.     Finally, Defendant's deficient COBRA notice also caused Plaintiffs an informational injury when Defendant failed to provide them with information to which they were entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

11

## RULE 23 ALLEGATIONS

67.    Plaintiffs brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the form attached hereto, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage**.

68.    No administrative remedies exist as a prerequisite to Plaintiffs' claims on behalf of the Putative Class.   As such, any efforts related to exhausting such non-existent remedies would be futile.

69.    Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

70.    Typicality: Plaintiffs' claims are typical of the Class.  The COBRA notice  that Defendant sent to Plaintiffs was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiffs received were typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

71.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class members, he has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

72.    Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

12

a.  Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

b.  Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c.  Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

d.  The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e.  Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

73.  Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

74.  Plaintiffs intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure.  The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party administrator.

## CLASS CLAIM I FOR RELIEF
### *Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

75.     Plaintiffs reincorporates by reference paragraphs 1-15 and 37-64 from above.

76.     The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

77.     Defendant is the plan sponsor and plan administrator of the Plan and was subject to the continuation of coverage and notice requirements of COBRA.

78.     Plaintiffs and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

79.     On account of such qualifying event, Defendant sent Plaintiffs and the Class Members a COBRA notice in the form attached hereto.

80.     The COBRA notice that Defendant sent to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons).

81.     These violations were material and willful.

82.     Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiffs and other Class Members.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiffs, individually and on behalf of the Class, pray for relief as follows:

a.     Designating Plaintiffs' counsel as counsel for the Class;

14

b.      Issuing proper notice to the Class at Defendant's expense;

c.      Declaring that the COBRA notice sent by Defendant to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d.      Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e.      Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f.      Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g.      Granting such other and further relief, in law or equity, as this Court deems appropriate.

DATED this 26th day of June, 2020.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
**LUIS A. CABASSA**
Florida Bar Number: 053643
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: 813-337-7992
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
**Attorneys for Plaintiff**

15

**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone 813-223-5505
Fax: 813-257-0572
Email: MEdelman@forthepeople.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 26th day of June, 2020, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all parties and/or counsel of record.

 */s/ Brandon J. Hill*
**BRANDON J. HILL**

16